**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| FIRST AMERICAN MORTGAGE SOLUTIONS, LLC and FIRST AMERICAN TITLE INSURANCE COMPANY<br>4 First American Way<br>Santa Ana, CA 02707<br><br>        Plaintiffs,<br><br>v.<br><br>NOVAD MANAGEMENT CONSULTING, LLC<br>8181 Professional Place<br>Suite 208<br>Landover MD<br>20785<br><br>        Defendant. | **COMPLAINT**<br><br>Civil Case Number: _____ |

**COMPLAINT FOR THE ISSUANCE OF A WRIT OF ATTACHMENT OR, IN THE**
**ALTERNATIVE, INJUNCTIVE RELIEF, IN AID OF ARBITRATION**

**INTRODUCTION**

Plaintiffs First American Title Insurance Company and First American Mortgage Solutions, LLC, (collectively, "First American" or "Plaintiffs") bring this action against Defendant Novad Management Consulting, LLC, ("Novad" or "Defendant"), relating to Defendant's breach of a Master Services Agreement (the "MSA") governing the rights of the parties, attached hereto as Exhibit A, which by its terms "shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1 – 16." Pursuant to the Federal Arbitration Act, Rule 64 of the Federal Rules of Civil Procedure, and Maryland law, First American seeks a Writ of Attachment against Defendant's bank accounts maintained by Novad in Maryland at Truist Bank in aid of a pending arbitration pursuant to a Demand for Arbitration filed by First American with the American

Arbitration Association, a copy of which is attached as Exhibit B hereto. In the alternative, First American seeks an injunction against Defendant Novad from concealing, moving, dissipating or otherwise transferring any assets, including the proceeds from the Novad settlement with the U.S. Department of Housing and Urban Development ("HUD"), up to $1,628,573.38, to be preserved to secure an anticipated arbitral award that would be confirmed as a judgment by this Court.

First American has filed a Demand for Arbitration with the American Arbitration Association asserting a claim against Defendant for breach of contract and account stated in the total amount of $1,628,573.38, and seeks the assistance of this Court with the issuance of a Writ of Attachment against Defendant's bank accounts at Truist Bank because Novad fraudulently induced First American to forebear from collection of Novad's debt to First American by misrepresenting the reasons that it could not pay and falsely representing that Novad would pay out of its recovery from its litigation with HUD.  Novad concealed its settlement with HUD, and its payment by HUD, and instead failed and refused to respond to any inquiries from First American since December 2025, thus creating the danger that Novad will abscond, remove assets or dissipate assets to avoid paying the funds owed to First American that First American expects to be awarded in arbitration.

## I.      THE PARTIES AND THEIR REPRESENTATIVES

1.      Plaintiff First American Title Insurance Company is a Nebraska corporation with its principal place of business at Santa Ana, California and Plaintiff First American Mortgage Solutions, LLC is organized as a limited liability company under the laws of the State of Delaware with its principal place of business at Santa Ana, California.

2.      Novad Management Consulting, LLC is a company organized and existing under the laws of the State of Maryland with its principal place of business located at 8181 Professional Place, Suite 208, Landover Maryland, 20785.

2

## II.   BASIS FOR JURISDICTION

3.      This Court has original jurisdiction over this civil action because complete diversity of citizenship exists between Plaintiffs and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).

4.      For purposes of establishing diversity jurisdiction, a corporation is a citizen of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

5.      Plaintiff First American Title Insurance Company is a corporation with its principal place of business at Santa Ana, California. Plaintiff First American Mortgage Solutions, LLC is a limited liability company with its sole member being First American Financial Corporation, a Delaware Corporation, and its principal place of business at Santa Ana, California.

6.      Defendant is a single-member limited liability company, with its sole member resident in Maryland and with its principal place of business at Landover, Maryland.

7.      Plaintiffs seek a Writ of Attachment in the amount of $1,628,573.38, the amount due and owing to First American as a result of Novad's breach of the MSA and a Statement of Work ("SOW"). Accordingly, the amount of controversy exceeds $75,000.

## III.   STATEMENT OF THE FACTS

8.      Novad entered into a contract with the U.S. Department of Housing and Urban Development ("HUD") to service certain types of loans – reverse mortgage loans. Novad engaged First American in March of 2022 pursuant to the MSA and the SOW issued as part of the MSA to perform services in support of Novad's contract with HUD. The SOW is attached hereto as Exhibit C.

9.      First American performed the contracted services throughout 2022. In fall of 2022, Novad sent a large batch of lien release orders for First American to fulfill under the terms of the

agreement between the two parties. First American timely completed these services and invoiced Novad for the agreed upon fees. Novad engaged First American in 2022 to perform lien release preparation and recording services in support of Novad's obligations to service HUD reverse mortgage loans.

10.     First American and Novad entered into the MSA on or around March 25, 2022. The MSA contained terms governing the provision of services by First American.

11.     Section 2.2 of the MSA states that Novad will remit to First American payment for services in accordance with the terms as provided in an SOW attached to and incorporated into the MSA by reference.

12.     The SOW contains additional terms specific to the lien release services First American was to provide to Novad.

13.     Section 5 of the SOW states that "All Fees for Services shall be paid within 45 days from receipt of the undisputed invoice . . . ." Novad also acknowledged in Section 5 that it "shall be responsible for the payment of all Fees for Services that are rendered by [First American] regardless of whether [Novad] has been paid for the services, . . . or for any other reason."

14.     Section 5.2 of the SOW states that if full payment is not made within the forty-five day period, Novad shall pay a charge equal to one and one-half (1 and ½) percent interest per month on the balance due.

15.     First American correctly invoiced Novad for services performed and provided supporting documentation of completion.

16.     Novad has not made a payment on any invoice issued by First American since February 2023.

17.     Novad informed First American that it had been replaced in December 2022 as HUD's prime contractor and that HUD was withholding payment pending resolution of contract disputes.

18.     On or about September 8, 2023, First American sent a Notice of Default and Reservation of Rights to Novad, demanding payment of the outstanding invoices, interest and attorneys' fees (the "9/8/23 Notice of Default"), a copy of which is attached as hereto as Exhibit D.  As of September 8, 2023, Novad owed First American a total unpaid balance of $1,041,826.08 (comprised of $876,557.19 in Recording Fees and $165,268.89 in Processing Fees (the "9/8/23 Unpaid Balance")).

19.     Novad has not contested the 9/8/23 Unpaid Balance stated in the 9/8/23 Notice of Default or the summary of invoices contained therein.

20.     Novad has not contested the accrual of interest on the Unpaid Balance at 1 and ½ percent interest per month.

21.     Novad's failure to pay outstanding invoices within forty-five days of their undisputed issuance puts Novad in breach of agreements between Novad and First American. The value of the outstanding invoices is over one million dollars.

22.     Novad maintained an account at Truist Bank at least as of February 1, 2023, the date of the last check First American received from Novad. A copy of the redacted check from Novad to First American is attached hereto as Exhibit E.

23.     First American has made repeated efforts to obtain payment from Novad. First American issued a Notice of Default to Novad on September 8, 2023 including a demand for payment, and was advised by Novad that it could not pay First American because it had not been paid by HUD. Novad assured First American that it was suing HUD for payment and would pay

First American once it got paid by HUD, and induced First American to forbear from immediate collection efforts and to enter into Tolling Agreements based upon its representations it would pay First American out of the proceeds of its resolution of the lawsuit against HUD. Despite Novad's representations to First American, Novad failed to notify First American that Novad had entered into a settlement agreement with HUD on September 18, 2025 and had been paid by HUD pursuant to the settlement by about January 2026. Despite repeated inquiries from First American in late 2025 and early 2026, Novad has refused to respond, concealed its settlement with HUD, concealed the payments it received from HUD, and has otherwise concealed its assets from First American. Additionally, while falsely representing to First American that it would be paid out of Novad's recovery from HUD, Novad concealed that it was being investigated for fraud by the Consumer Financial Protection Bureau ("CFPB") and that in June 2024 it entered into a Consent Decree, which is attached hereto as Exhibit F, by which it admitted it engaged in deceptive practices in violation of sections 1031(a) and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), and agreed to being permanently restrained from:

> a. Advertising, marketing, promoting, offering for sale, selling, or servicing reverse mortgages, or Assisting Others in the advertising, marketing, promoting, offering for sale, selling, or servicing of reverse mortgages; or
>
> b. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any person engaged in or Assisting Others in advertising, marketing, promoting, offering for sale, selling, or servicing reverse mortgages.

24. The Tolling Agreement entered into on December 4, 2024, and the Tolling Agreement extensions entered into on May 5, 2025 and October 16, 2025, were entered into in reliance upon Novad's representations that it could not pay because of an alleged contractual dispute with HUD, and that Novad would pay out of the proceeds of the HUD lawsuit. At no time did Novad disclose that it was being investigated by the CFPB or that it had entered into the

6

Consent Decree with the CFPB in June 2024, even though it induced First American to enter into extensions of the Tolling Agreement after admitting it had engaged in fraud. Nor did Novad at any time disclose that it had entered into a settlement agreement with HUD on September 18, 2025 by which it would be paid by HUD.

25.     Novad refused to answer First American's communications concerning the HUD settlement status on June 11, 2025 and August 4, 2025. *See* Exhibit G (emails 138, 213).

26.     The most recent communication First American possesses from Novad concerning the HUD settlement is on September 4, 2025. *See* Exhibit H (email 89). In its communication, Novad stated that it was hopeful that September 30 would serve as a final deadline for resolution of this issue. *Id.*

27.     Novad communicated with First American agreeing to the October 16, 2025 Tolling Agreement extension, but did not disclose that it had already entered into the settlement agreement with HUD on September 18, 2025. *See* Exhibit I (email 87). At no point during these communications did Novad disclose that a settlement had been approved and that payment from HUD would be forthcoming.

28.     Since entering into the October 16, 2025 Tolling Agreement extension, Novad has failed and refused to respond to any inquiries from First American other than to falsely deny that the HUD settlement had been approved. *See* Exhibit J (text messages between First American representatives and Novad CEO Davon Kelly, where Kelly refuses to response to multiple messages spanning January 12, 2026 to February 11, 2026).

29.     Novad has failed and refused (a) to communicate about the settlement agreement, (b) respond to any inquiries since December 2025, or make any payments toward its debt to First American. It is now apparent that Novad's prior representations that it would pay First American

7

after receiving settlement funds were false and Novad is attempting to conceal the proceeds of that settlement.

**IV.    CLAIMS AND RELIEF SOUGHT**

**FIRST CLAIM – ISSUANCE OF WRIT OF ATTACHMENT**

30.    First American has filed a Demand for Arbitration with the American Arbitration Association pursuant to Section 21 of the MSA, seeking payment from Novad of the amount of $1,041,826.08, plus interest through March 18, 2026 in the amount of $586,747.30, for a total of $1,628,573.38, and expects to receive an arbitration award in that amount since Novad has not contested the debt and has no grounds for contesting the debt. Pursuant to the Federal Arbitration Act, First American expects to file that award with this Court consistent with Section 21 of the MSA that provides "[a]ny award of the arbitrator may be entered as a judgment in any court having jurisdiction."

31.    As alleged in the Demand for Arbitration,

    a.    First American and Novad entered into a valid and enforceable agreement, as memorialized in the form of the Master Services Agreement and Statement of Work, pursuant to which Novad agreed to pay undisputed invoices for processing fees and recording fees in exchange for First American's fulfillment of lien release orders.

    b.    Through its wrongful conduct described above, Novad repeatedly breached its agreement with First American, including without limitation, by failing to pay First American timely in accordance with the MSA.

c. Novad breached the MSA and SOW by failing and refusing to pay outstanding invoices within forty-five days from receipt of undisputed invoices.

32.     As a direct and proximate result of Novad's breach, First American has suffered substantial damages, not less than $1,041,826.08 as of September 8, 2023, plus, pursuant to Sections 12.2 and 12.3 of the MSA, interest accruing at 1 and ½ percent per month from September 8, 2023 to the present (totaling $586,747.30 as of March 18, 2026), for a total claim of $1,628,573.38 plus all attorneys' fees and costs incurred by First American in pursuit of collecting the delinquent amounts from Novad.

33.     It is undisputed that Novad owes First American the principal amount of $1,041,826.08 pursuant to the MSA and SOW, plus interest, as set out in First American's Notice of Default dated September 8, 2023, which Novad did not dispute. Thus, First American brings this Complaint for the issuance of a writ of attachment against Novad to secure an anticipated judgment in the amount of $1,628,573.38, which is comprised of the principal amount of $1,041,826.08, plus interest through March 18, 2026, in the amount of $586,747.30.

34.     Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a).

35.     Maryland statutes and rules provide for pre-judgment attachment and are to be applied to a motion for issuance of a pre-judgment attachment pursuant to Fed. R. Civ. P. 64(a). The Maryland Rules permit a plaintiff upon filing a complaint to request an order directing the issuance of a writ of attachment and to make the request *ex parte*. Maryland Rule 2-115(a).

9

36.    Maryland statute authorizes attachment in certain circumstances applicable here:

"A court of law including the District Court, within the limits of its jurisdiction, may issue an attachment at the commencement of the action or while it is pending against any property or credits, whether matured or unmatured, belonging to the debtor upon the application of the plaintiff in the action." Md. Code Ann., Cts & Jud. Proc. § 3-302.

37.    An attachment before judgment may issue in a number of instances described by Md. Code Ann., Cts & Jud. Proc. § 3-303:

(b) If the debtor is a nonresident individual, or a corporation which has no resident agent in this State, and:

(1) The debtor is a person over whom the court could exercise personal jurisdiction pursuant to §§ 6-102, 6-103, and 6-104 of this article; or

(2) The action involves claims to property in this State which property is to be attached; or

(3) The action is any other in which the attachment is constitutionally permitted.

(c) If a resident individual defendant or an agent authorized to accept process for a corporation has acted to evade service.

(d) If the debtor has absconded or is about to abscond from the State; or if an individual has removed, or is about to remove, from his place of abode in the State with intent to defraud his creditors.

(e)(1) If the debtor is about to assign, dispose of, conceal, or remove his property or a portion of it from the State with intent to defraud his creditors; or

(2) If the debtor has done any of these acts, or fraudulently contracted the debt or incurred the obligation which is the subject of the pending action.

38.    Under Maryland law, the Court can also order an attachment before judgment against the property of a debtor when the plaintiff alleges fraud, the facts indicate a substantial likelihood of fraud, and there is a probability that the defendant will dissipate the assets. *Allen Corp. of American, Inc. v. Zayas*, 2014 WL 6893868 at \*2 (D. MD. Dec. 4, 2014) (citing *Levitt v. State of Md. Deposit Ins. Fund Corp.*, 505 A.2d 140 (Md. Ct. Spec. App. 1986); *Teferi v. Dupont Plaza Assocs.*, 551 A.2d 477 (Md. Ct. Spec. App. 1989); *see also United States ex rel. Rahman v.*

*Oncology Assocs.*, 198 F.3d 489, 499-501 (4th. Cir. 1999) (citing *Levitt* and *Teferi* with approval to explain that the district court had authority under Maryland law, through FRCP 64, to issue a prejudgment attachment, or enter a preliminary injunction freezing defendants' assets in a fraud case).

39. The Court may issue orders in assistance of the arbitration to preserve the status quo so the results of the arbitration can preserve the parties' rights and return them to the status quo ante, and so the arbitration not be rendered a hollow formality.

40. Novad has actively concealed its assets, has fraudulently induced First American to forebear from collecting its debt, and there is a substantial risk that Novad intends to abscond from the jurisdiction and/or conceal, dissipate, remove, or transfer its assets to defraud its creditors, including First American.

**SECOND CLAIM -IN THE ALTERNATIVE -- INJUNCTIVE RELIEF TO PRESERVE STATUS QUO PENDING ARBITRATION AWARD IF THE ATTACHMENT IS NOT ADEQUATE TO SECURE THE OUTSTANDING DEBT**

41. In the alternative, First American is entitled to an injunction against Novad prohibiting it from concealing, moving, dissipating or otherwise transferring any assets, including the proceeds from the Novad settlement with HUD, up to $1,628,573.38, which should be preserved to secure an anticipated arbitral award that would be confirmed as a judgment by this Court.

42. First American seeks such injunctive relief only in the event that the accounts of Novad Management Consulting LLC held at Truist Bank are not adequate to secure the debt by preserving assets to cover the amount sought by First American in the Arbitration for breach of contract and account stated, i.e., $1,628,573.38.

11

## V.   REQUEST FOR RELIEF

43.     First American seeks a Writ of Attachment against Defendant's bank accounts at Truist Bank in Maryland in aid of a pending arbitration pursuant to a Demand for Arbitration filed by First American. The Writ of Attachment is necessary to maintain the status quo pending completion of the arbitration process. First American seeks any further relief as the Court may deem just and proper.

Date: March 30, 2026                    Respectfully submitted,

*/s/ Kirk R. Ruthenberg*
Kirk R. Ruthenberg
Bar No. 09893
Dentons US LLP
1900 K Street Northwest
Washington, DC 20006
kirk.ruthenberg@dentons.com
(202) 496-7500 telephone
(202) 496-7756 fax

**Counsel for Plaintiffs First American Title
Insurance Company/
First American Mortgage Solutions, LLC**

12

132620033